BRADY, Special Administratrix, Appellant, vs. CHICAGO & NORTH WESTERN RAILWAY COMPANY, Respondent.

FRENCH, Special Administratrix, Appellant, vs. SAME, Respondent.

*January 5—February 2, 1954.*

For the appellants there were briefs by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan* and *J. Robert Kaftan*.

For the respondent there was a brief by *E. H. Borgelt* and *W. J. Roper,* both of Milwaukee, attorneys, and *Fred-*

*erick N. Trowbridge* of Green Bay of counsel, and oral argument by *Mr. Roper*.

BROWN, J.   In their first cause of action plaintiffs allege that the deaths were due to the negligence of the railroad company in failing to fence its right of way at the place where the boys entered upon railroad property and proceeded to the bridge.  The trial court found as a matter of law that this spot was within the depot grounds and, therefore, the railroad had no duty to fence it, as declared by sec. 192.33 (1), Stats.  Incidentally, the jury reached the same conclusion in its special verdict as a matter of fact.  There can be no quarrel with this determination.

Appellants present the case of the Brady boy as one resting on defendant's negligence, modified by the "attractive nuisance" principle, and the case of Walter French as one in which the "rescue rule" requires judgment in favor of his estate.

The bridge in question was frequently used by the public of all ages as a place to fish or loaf and as a passage across the river more convenient than the regular highway bridge a short distance away.  The defendant tolerated such use and made no effort to prevent it.  Under such circumstances the users of the bridge are gratuitous licensees rather than trespassers, but licensees take the premises as they find them and the owner owes them no duty except to refrain from injuring them by active negligence. *Brinilson v. Chicago & N. W. R. Co.* (1911), 144 Wis. 614, 618, 129 N. W. 664; *Klix v. Nieman* (1887), 68 Wis. 271, 274, 32 N. W. 223.

"A possessor of land is not subject to liability to his licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by any dangerous condition thereon, whether natural or artificial, if they know of the condition and realize the risk involved therein." Restatement, 2 Torts, p. 927, sec. 340.

The plaintiffs have attempted to avoid the application of this principle by asserting that the ages of the children were such that the bridge constituted an attractive nuisance as to them. The attractive-nuisance doctrine imposes on an owner a duty to protect trespassers or licensees who are children of tender years greater than that which he would owe to adults under the same circumstances. In granting the motion for a directed verdict the learned trial court stated that the doctrine did not apply because the children were not on the bridge to play there but were using it merely as a short cut. There is much authority for this distinction. 38 Am. Jur., Negligence, p. 811, sec. 146; *Sage's Admr. v. Creech Coal Co.* (1922), 194 Ky. 415, 240 S. W. 42; *Hendricks v. Kansas City Southern R. Co.* (1917), 142 La. 499, 77 So. 130. However, we are controlled by the rule which we first laid down in *Angelier v. Red Star Yeast & Products Co.* (1934), 215 Wis. 47, 53, 254 N. W. 351, and reaffirmed in *Larson v. Equity Co-operative Elevator Co.* (1946), 248 Wis. 132, 21 N. W. (2d) 253. We said:

" '. . . that a possessor of real estate should be subjected to liability to a young child who is injured upon his premises if it be found that the former maintained, or allowed to exist, upon his land, an artificial condition which was inherently dangerous to children being upon his premises; that he knew or should have known that children trespassed or were likely to trespass upon his premises; that he realized or should have realized that the structure erected or the artificial condition maintained by him was inherently dangerous to children and involved an unreasonable risk of serious bodily injury or death to them; that the injured child, because of his youth or tender age, did not discover the condition or realize the risk involved in going within the area, or in playing in close proximity to the inherently dangerous condition; and that safeguards could reasonably have been provided which would have obviated the inherent danger without materially interfering with the purpose for which the artificial condition was maintained.' "

Liability under the rule thus stated is not limited by reason of the child's motive in coming upon the premises. Accordingly, we cannot approve the trial court's disposition of the motion on the ground that the children were not attracted to the premises to play there.

We must, then, consider the action of the jury. The court submitted a special verdict which follows, step by step, the rule of the *Angelier* and *Larson Cases, supra.* The jury's answers were as follows: (1) The defendant was negligent in maintaining its bridge where the accident occurred in a manner inherently dangerous to children. (1–a) This negligence was a cause of the death of Terrance Brady and (1–b) of Walter French. (2) The defendant knew or ought to have known that children were likely to be in its vicinity, and (3) should have realized that the bridge was dangerous to children who played on it. (4–a) Terrance Brady did not because of his age fail to discover the condition and realize the risk involved. (4–b) Walter French did not because of his age fail to discover the condition and realize the risk involved. (5) The defendant could have provided safeguards which would have obviated the danger without interfering with the purposes of the bridge.

There were other questions and answers which found that neither boy was attracted to the bridge as a place to play and that each boy was guilty of contributory negligence of 90 per cent causing his death and the railroad of causal negligence of 10 per cent in each case.

The jury thus found that an element is lacking which we have stated, in the *Angelier* and *Larson* opinions, *supra,* is essential to fasten liability on the owner of premises for injury to a child under circumstances where there would be no liability if the victim had been older. That element is the failure of the child, because of its youth, to discover the condition or realize the risk involved. We note that in questions (4–a) and (4–b) the verdict used the conjunctive

"and" instead of the disjunctive "or," but the evidence on this subject is so clear and convincing that the boys were familiar with the premises and knew that the catwalk came to an end and realized the risk of falling into the river unless they stepped over to the ties that no other answer, supported by the evidence, could be given to either part of the question. Hence, we conclude no prejudice resulted. The law, however, does not require that, to avoid being dealt with as an adult, the child's age must prevent him both from discovering the condition *and* realizing the risk. Either one will do, the other requirements of the rule being satisfied, to give him the protection of the favor extended by the rule to a young child.

Since the jury found that Terrance and Walter's knowledge and appreciation of their situation was not prevented by their ages they stand in the law as adult licensees would stand under the same circumstances. Our rule, as we acknowledged at page 136 of the *Larson* opinion, *supra,* was a paraphrase of Restatement, 2 Torts, p. 920, sec. 339. In commenting on the situation presented here, Restatement, 2 Torts, p. 922, sec. 339 *b,* has this to say:

*"When risk such that children can appreciate it.* The duty which the rule stated in this section imposes upon the possessor of land is based upon the well-known tendency of children to trespass upon the land of others and the necessity of protecting them, even though trespassers, from their childish lack of attention and judgment. The duty of the possessor, therefore, is only to keep so much of the land upon which he should recognize the likelihood of children trespassing, free from those conditions which, though observable by adults, are likely not to be observed by children or which contain risks the full extent of which an adult would realize but which are beyond the imperfect realization of children. It does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them. . . ."

We consider this statement appropriate to the cases now before us. No special duty was owed by the defendant to these children over and above that due older gratuitous licensees. The danger arose solely from the manner in which defendant constructed and maintained its premises and it was open and apparent. This passive negligence, such as it was, would not sustain a cause of action in favor of an adult licensee and it will not sustain one in favor of a child having the knowledge and realization found by the jury.

Counsel submits that defendant is liable to the estate of Walter French because of the "rescue rule" which he states as follows:

" 'It seems to be well settled that where one person is exposed to peril of life or limb by the negligence of another, the latter will be liable in damages for injuries received by a third person in a reasonable effort to rescue the one so imperiled. The proximate cause of the injury in such case is the negligence which caused the peril, provided the intervention to effect a rescue is not a rash or clearly imprudent act. An owner of premises who creates thereon a condition dangerous to children is liable to a third person who goes to the rescue of a child imperiled by such condition, where, under the circumstances, including the attractive and alluring nature of the condition, the owner was obligated to use ordinary care to prevent injury to the child from such danger. Thus, where a child falls into a canal through the culpable negligence of state officers or employees, and its father thereupon plunges into the canal in an attempt to rescue his child and both are drowned, the death of both is a consequence of such negligence, and where the state has voluntarily assumed liability for the negligence or misfeasance of its officers or employees and has consented to be sued, it is answerable for the death of the father as well as that of the child.' 38 Am. Jur. 739."

Liability by a defendant to a rescuer must rest on a breach of a duty owed directly by the defendant to the rescuer, or by the defendant to the person whose rescue is attempted. It is

not contended in this part of the argument that the defendant breached any duty toward Walter, who jumped into the river voluntarily, and as we have stated earlier in the opinion, it breached no duty owed to Terrance, who was a gratuitous licensee. The negligence referred to in the quotation from American Jurisprudence, *supra,* must be actionable negligence. In *Moen v. Madison Railways Co.* (1932), 208 Wis. 381, 385, 243 N. W. 503, we said that the absence of a duty eliminates all cases of negligence because it removes the foundation upon which negligence rests.

"Negligence in law consists in the omission or inadvertently wrongful exercise of a duty, which omission or exercise is the legal cause of damage to another." *Hasbrouck v. Armour & Co.* (1909), 139 Wis. 357, 362, 121 N. W. 157.

The comment of Corpus Juris Secundum on this phase of the rescue doctrine is:

"The rescue doctrine has been held to be applicable only where the situation which invites rescue is created by the *tortious* act of defendant or one for whom he is responsible, and, in order to invoke the doctrine where defendant is not responsible for the peril to the one sought to be rescued, defendant must be guilty of negligence toward the rescuer after he has begun to attempt the rescue." 65 C. J. S., Negligence, p. 738, sec. 124. (Italics ours.)

In the instant case there was no breach of duty by the defendant toward Terrance Brady. The foundation of negligence was thereby removed; there was no tortious act on the part of the defendant. The effect of the rescue doctrine when properly applied, and as we have found it applied in our research on the subject, is to extend for the benefit of the rescuer the liability which the defendant in a given case may have toward the person whom it has placed in danger. But where the act of the defendant is not tortious and presents no cause of action to the person in danger, an attempted

rescue creates no new, independent right or liability. If a defendant did not breach a duty which it owed the person to be rescued, it is, on the same facts, guilty of no breach of duty owed the rescuer. Without some breach of duty there is nothing upon which liability may be based.

While we consider that the judgment cannot be affirmed for the reasons given by the trial court, nevertheless we conclude the judgments dismissing the respective complaints must be affirmed for the reasons we have stated.

*By the Court.*—Judgments affirmed.