MASSINO, by Guardian *ad litem,* Appellant, vs. SMAGLICK and another, Respondents.

*March 6—April 8, 1958.*

608

For the appellant the cause was submitted on the briefs of *Gerald Hayes, Jr.,* and *Thomas J. Regan,* guardian *ad litem,* both of Milwaukee.

For the respondents there was a brief and oral argument by *Raymond J. Moore* of Milwaukee.

BROADFOOT, J.   In a memorandum decision the trial court held that a piece of composition shingle such as was being thrown was not inherently dangerous.  The case was tried on the theory that the building under construction was an attractive nuisance.  The trial court further held that the plaintiff had failed to prove that the condition of the premises was one of which the possessor knew or should have known and which he realized or should have realized would involve an unreasonable risk of death or serious bodily harm to a trespassing child of tender years.

The plaintiff argues that Wisconsin follows the attractive-nuisance doctrine, as stated in Restatement, 2 Torts, p. 920, sec. 339, and that the words "inherently dangerous" do not appear therein.  Originally Wisconsin, and probably all other states, held that a possessor of land owes no duty to trespassers except to refrain from wilful and intentional injury or active negligence.  As human safety became a matter of more concern exceptions to this general rule have arisen.  One of those exceptions is the attractive-nuisance doctrine.  There are several theories for the adoption of this doctrine.  Many

states hold that the maintenance of a dangerous artificial condition upon land by the possessor which would attract children of tender age who cannot discover or realize the risk involved in intermeddling with it, constitutes an invitation to the children and that they cannot therefore be classed as mere trespassers. Other states do not attempt to justify the logic of the doctrine but merely state that it is invoked because of humanitarian considerations.

Although the name was not used, the conditions that must be established to permit recovery in this type of case were first stated by this court in *Angelier v. Red Star Yeast & Products Co.* 215 Wis. 47, 254 N. W. 351. This decision was announced and filed on April 3, 1934. The Restatement of the Law of Torts was not published until later in that year and did not reach the library of this court until January, 1935. However, in the decision it was stated that the rules applicable in this state are in harmony with Tentative Draft No. 4, sec. 209 of the Restatement of Torts. Except for the title and the use of the word "injury" instead of "harm" in paragraph (b) the language in the tentative draft is the same as in the Restatement as published. The doctrine as stated in the *Angelier Case* is as follows (p. 53):

"It is our opinion that a possessor of real estate should be subjected to liability to a young child who is injured upon his premises if it be found that the former maintained, or allowed to exist, upon his land, an artificial condition which was inherently dangerous to children being upon his premises; that he knew or should have known that children trespassed or were likely to trespass upon his premises; that he realized or should have realized that the structure erected or the artificial condition maintained by him was inherently dangerous to children and involved an unreasonable risk of serious bodily injury or death to them; that the injured child, because of his youth or tender age, did not discover the condition or realize the risk involved in going within the area,

or in playing in close proximity to the inherently dangerous condition; and that safeguards could reasonably have been provided which would have obviated the inherent danger without materially interfering with the purpose for which the artificial condition was maintained."

In a minority of the states the doctrine is not recognized. In many states the courts do not follow exactly the language of the Restatement. It might be said that the Restatement is the common denominator of the rule but that different states use some variations from the exact language. In later cases this court has referred to the *Angelier Case* as stating the doctrine effective in this state. In the case of *James v. Wisconsin Power & Light Co.* 266 Wis. 290, 63 N. W. (2d) 116, the language of the Restatement is quoted and it was stated that this court recognized that rule as the law of this state, citing the *Angelier Case, Larson v. Equity Co-operative Elevator Co.* 248 Wis. 132, 21 N. W. (2d) 253, and *Brady v. Chicago & N. W. R. Co.* 265 Wis. 618, 62 N. W. (2d) 415.

This court did not intend in the *James Case* to adopt the language of the Restatement verbatim. In the special verdict submitted in the *James Case* the words "inherently dangerous" were used. In *Nechodomu v. Lindstrom,* 273 Wis. 313, 77 N. W. (2d) 707, the special verdict and the instructions of the court used the words "inherently dangerous." In none of the cases following the *Angelier Case* has there been any indication in our decisions that there should be a change in the rule set out in the *Angelier Case.* This particular requirement is stated in Restatement, 2 Torts, p. 920, sec. 339, as follows:

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children,"

Some authorities interpret this language to mean that the condition or instrumentality must in and of itself be "highly dangerous" or *"per se* dangerous." Wisconsin, like many other states, uses the term "inherently dangerous." We think they all mean the same thing.

We agree with the trial court that the piece of shingle which struck plaintiff in the eye was not inherently dangerous. His injury was caused by a distinct and unrelated cause, which was the throwing of the object by an older boy, something that the defendants could not anticipate. The defendants had been engaged in building houses for many years and each of them testified that he had never known of boys climbing upon roofs of houses under construction and throwing pieces of shingle or other building materials there found at other children. In order to recover it was necessary for the plaintiff to establish by the requisite degree of proof that the defendants were, or one of them was, negligent in each of the respects stated in the *Angelier Case.* The plaintiff failed to meet his burden of proof.

*By the Court.*—Judgment affirmed.